213 A.2d 814.

AMERICO RICHARDS *et al. vs.* ZONING BOARD OF REVIEW OF THE CITY OF PROVIDENCE.

OCTOBER 26, 1965.

PRESENT: Roberts, Paolino and Joslin, JJ.

PAOLINO, J. This petition for certiorari was brought to review a decision of the respondent board reversing a decision of the director of the department of building inspection of the city of Providence, hereinafter referred to as the building inspector. Pursuant to the writ the pertinent records have been certified to this court.

Yvonne Searle, hereinafter referred to as the applicant, owns the premises involved in this petition. They are located at 13 Montrose street on land designated as lots 846 and 847 on assessor's plat 64 in an area presently zoned "R-4 Multiple Dwelling Zone." The building located on applicant's land consists of a vacant first floor and two apartment units on the second floor.

On February 2, 1965, pursuant to the provisions of sec. 82 of the zoning ordinance of the city of Providence, chap. 544, approved September 21, 1951, the applicant filed a written application with the building inspector requesting a certificate of occupancy for use of the first floor premises as a catering business. The building inspector denied the application on the ground that the proposed use could be conducted only in a C-2 or less restricted zone under the existing ordinance. From such decision the applicant appealed to the zoning board of review in accordance with the provisions of G. L. 1956, §45-24-19a.

She based her appeal on the grounds that prior to June 6, 1923, the date of the adoption of the first zoning ordinance of the city of Providence, the premises were used for the manufacturing, compounding, processing and packaging of bakery goods for delivery off the premises; that on June 6, 1923 such use as an industrial bakery became a legal nonconforming use; that on September 21, 1951, the

date when chap. 544, the present zoning ordinance, was approved, the premises were still in use as an industrial bakery and thereby continued as a legal nonconforming use; and that in the circumstances her request for a certificate of occupancy for a catering business should be granted.

Under sec. 61 of the ordinance an industrial bakery is a permitted use in a M-1 general industrial zone. A catering establishment under sec. 52 is a C-2 general commercial use and within the uses permitted in a M-1 zone.

It appears from the testimony presented at the hearing before the board that from 1905 to 1938 the applicant's father, Alcida Rondeau, conducted a bakery business on the premises in question; that his operation consisted of baking bread on the premises for sale elsewhere; that at one time he operated five trucks and employed as many as thirteen driver salesmen; and that he continued this business until 1938 when he retired.

When the first comprehensive zoning ordinance was adopted by the city in 1923, the area in which these premises were located was classified as an apartment house district by the pertinent section of such ordinance. The type of business conducted by the applicant's father was not a permitted use therein, except as a legal nonconforming use under chap. 370, sec. 3, of the ordinances of the city of Providence, approved June 6, 1923.

It further appears from the record that from 1938 until 1941 the premises were occupied by Vasa Bakery, which was managed by Mrs. Juliet Grenon, the applicant's sister; that she conducted an operation similar to her father's; and that from 1941 to 1943 the premises were vacant and from 1943 to 1946 they were used for the storage of caskets. From 1946 until 1953 the building was occupied by Keating Bakery which used the premises to manufacture and package its products for delivery elsewhere. When chap. 544,

the new zoning ordinance, was approved on September 21, 1951, the area in which the applicant's land is located was classified as a R-4 multiple dwelling zone.

Mr. Alfred Noviello, one of the remonstrants, testified that in 1950 and 1951 he rented the rear portion of the building while Keating Bakery rented the front; that during this time the oven which had been used by Mr. Rondeau was located on the portion of the premises rented by Mr. Noviello and was never operated; that he did not think the oven was operable; that he was almost positive it was blocked in; and that a portion of it was broken off so that an automobile would fit in the rear of the building. Mr. Americo Richards, one of the petitioners here, testified that after Keating Bakery vacated the building it was used for storage.

It appears from the transcript that between 1953 and 1964 the premises were used for the storage of linoleum and for the operation of a shirt-pressing business. The record also discloses that ovens are still on the premises. In addition the applicant and her sister testified that there had never been any intention of giving up the use of the premises as an industrial bakery.

After the hearing the board entered a decision reversing the decision of the building inspector and directing him to issue forthwith a certificate of occupancy authorizing the use of the above premises for the operation of a catering business. In their decision the board stated that they had viewed the premises and the surrounding properties and had examined in detail and considered all the evidence presented by the applicant and the objectors.

Attached to the board's decision is a record containing a summary of the evidence presented at the hearing, including an express reference to the applicant's evidence that the premises were the subject of a legal nonconforming M-1 general industrial use and that the proposed use would be

a lesser use. This summary also contains an express statement that in sustaining the applicant's appeal the members of the board were of the opinion that there was sufficient credible evidence to convince them that "the subject property was a legal non-conforming use."

This petition raises two principal questions for our determination. The first is whether there is legally competent evidence in this record to support the board's finding that there was a legal nonconforming use of the applicant's premises entitling her to a certificate of occupancy to use them as a catering establishment. We answer the first question in the affirmative.

Section 23.B.1.(b) of the zoning ordinance provides that: "The nonconforming use of a building or structure may be changed only to a use of the same or more restricted classification." The petitioners, as we understand their position, concede the existence of a legal nonconforming use at some time prior to the filing of the application, but they argue that such use, if it existed, was only a C-1 limited commercial use, as defined in sec. 51.A.3.(a) of the ordinance, namely, a retail bakery. In the circumstances, they contend, any nonconforming use which existed in 1951 was only a C-1 use which was a more restricted use than the C-2 use requested by the applicant.

The petitioners' contention on this issue is not supported by the very section of the ordinance upon which they rely. Section 51.A.3 contains the following significant paragraphs:

> "The above specified stores, shops or businesses shall be retail establishments selling new merchandise exclusively.
> "All products shall be sold at retail on the premises and not more than four persons shall be engaged exclusively in the process of production."

Because there is competent evidence indicating that from 1905 almost continuously until 1953 these premises were

used in the baking of products for transportation and use or sale elsewhere, we cannot say that the board erred in determining that such use was not a C-1 use. In our opinion the evidence supports the board's ultimate finding that the premises had been used as an industrial bakery, a M-1 general industrial use, within the meaning of sec. 61.A.2.(i), which permits: "The manufacture, compounding, processing, packaging or treatment of such products as bakery goods * * *." The use as an industrial bakery was a M-1 legal nonconforming use and since a M-1 zone is less restricted than a C-2 zone, the board's decision authorizing a C-2 use in the applicant's building was neither arbitrary nor an abuse of discretion or error, unless the right to such legal nonconforming use was lost by abandonment.

We come now to a consideration of petitioners' contention that the legal nonconforming use upon which the applicant relies, even if in fact and in law it existed, was abandoned between the date of the enactment of the applicable zoning ordinance and the date of the hearing before the board. The petitioners contend in substance that any legal nonconforming use which may have previously existed was abandoned after the building was vacated by the Keating Bakery in 1953.

The parties have called no case to our attention, nor have we found any, where this court has considered the question of abandonment in a zoning case. The general rules relating to this problem are discussed in 101 C.J.S. Zoning §198, p. 962. See also 8 McQuillin, Municipal Corporations (3rd ed. rev.) §25.192, p. 491, which states:

> "The abandonment of a nonconforming use and the consequent termination of any legal right thereto results, generally speaking, from a concurrence of facts, circumstances and the intention of the owner of the premises or other person entitled to the use. Intention with respect to the abandonment of a nonconforming use is to be ascertained from acts as well as statements. In this connection, acts under some circumstances speak

louder than words. That is to say, the question of abandonment, like the question of an existing business use, must be approached upon the basis that the law is concerned, not with a mere plan in mind or a change of intention, but with overt acts or failure to act. In truth, the abandonment of a nonconforming use ordinarily depends upon a concurrence of two factors: (a) An intention to abandon; and (b) some overt act, or some failure to act, which carries the implication that the owner does not claim or retain any interest in the subject matter. Also, in determining whether or not a nonconforming use has been abandoned, the nature of the subject matter must be given due consideration.

"Time is not an essential element of abandonment of a nonconforming use."

We have examined *Beyer* v. *Mayor and City Council of Baltimore,* 182 Md. 444, cited by both parties, as well as *City of Medford* v. *Marinucci Bros. & Co.,* 344 Mass. 50. There is no dispute about the applicable law on this issue. The precise question for us to determine is whether, applying the law set forth by the cited authorities and cases, there has been an abandonment of the legal nonconforming use in the case at bar.

In view of the uncontradicted and unimpeached evidence that the oven is still on the premises; in view of the absence of any evidence that the premises have been so altered as to prevent their use as an industrial bakery; and in view of the statements of the applicant and her sister that neither they nor their parents before them had any intention of abandoning the use of this building as an industrial bakery, we cannot say that the board was not warranted in determining, as it implicitly did, that there had not been an abandonment of the existing legal nonconforming use.

In reaching this conclusion we have not overlooked the evidence of petitioners that the oven used originally by Mr. Rondeau had not been used in later years and that

some changes had been made thereto. Nor have we overlooked the testimony that after 1953 the premises were vacant for some time and that they were used for the storage of linoleum and for a shirt-pressing establishment. There is no evidence indicating that the applicant ever intended to use the premises permanently for a higher use or to put them into a higher classification. See *Beyer* v. *Mayor and City Council of Baltimore, supra,* at p. 452. The storage of linoleum is a M-1 use (sec. 61.A.2. n) and a shirt-pressing establishment may be permitted under certain conditions in a C-4 zone under sec. 54.A.9.(c). Each of these zones is a less restricted classification than a C-2 zone which is required for a catering establishment. Finally, there is no evidence in the record which has impeached or discredited the positive testimony of the applicant of an absence of intention to abandon the legal nonconforming use of her premises as an industrial bakery.

We next consider petitioners' contention that the board's decision does not contain sufficient reasons or findings of fact and should therefore be remanded to the board for clarification. They cite *Robinson* v. *Town Council,* 60 R. I. 422, *Buckminster* v. *Zoning Board of Review,* 68 R. I. 515, and other decisions of this court affirming our well-settled rule that zoning boards should set forth the reasons and grounds on which they base their decisions to enable this court intelligently to review such decisions without speculation as to the reasons on which they are based.

We agree with the petitioners that the decision of the board fails to comply with the rule of the cited cases because it does not state clearly and distinctly the basis for it. However, as the court said in *Winters* v. *Zoning Board of Review,* 80 R. I. 275, 277, "we have not subjected the parties to such delay and inconvenience where we were able to satisfy ourselves from the record that the board's decision was either correct or erroneous regardless of their fail-

ure to give the reasons for their decision." In the case at bar we have been able to ascertain from the record the reasons for the board's decision and in our opinion it is supported by competent evidence and is therefore sustained. *Hazen* v. *Zoning Board of Review*, 90 R. I. 108; *Zimarino* v. *Zoning Board of Review*, 95 R. I. 383, 187 A.2d 259.

The petition for certiorari is denied and dismissed, the decision of the respondent board is affirmed, the writ heretofore issued is quashed, and the records in the case which have been certified to this court are ordered returned to the respondent board with our decision endorsed thereon.

*Anthony B. Sciarretta, Gordon C. Mulligan,* for petitioners.

*William E. McCabe, David J. Kehoe,* for respondent.

*Robert J. McOsker,* for applicant.