TOWN OF COVENTRY

v.

Carl D. GLICKMAN et al.

No. 80–255–Appeal.

Supreme Court of Rhode Island.

May 5, 1981.

Arthur G. Capaldi, Town Sol., Coventry, for appellant.

Quinn, Cuzzone, Geremia & Pennacchia, John F. Cuzzone, Jr., Providence, for appellees.

OPINION

KELLEHER, Justice.

The town of Coventry commenced this civil action in Superior Court, seeking an order enjoining Carl Glickman, William Yamin, William Hoiles d. b. a. Woodland Development Co., and William Demarest (hereinafter Woodland) from dividing into individual lots a parcel of property located in Coventry. The trial justice denied the town's request for injunctive relief and granted Woodland's counterclaim for declaratory relief from the development restrictions imposed on them by the town.

The pertinent facts of this controversy are not in dispute. On December 27, 1956, the United States (the government) obtained in the United States District Court for the District of Rhode Island a judgment, condemning 8.16 acres of land located in Coventry, Rhode Island.[1] Later, during 1958, the government erected thirty-two single-family houses on the property, which were occupied by military personnel and their dependents until 1975. The personnel were assigned to a nearby Nike site. This housing complex, which was known as the Capehart Family Housing Area, was declared surplus property by the General Services Administration in 1976 and subsequently sold by way of sealed bids that were opened in late July 1978. Woodland's bid of $370,000 was the highest; and subsequently, after the necessary paper work had been accomplished, Woodland acquired title to the complex on February 20, 1979.[2]

On August 15, 1978, the Coventry Town Council adopted a resolution barring any use of the property unless the use was approved by the Zoning Board of Review. Later, on December 26, 1978, the council reaffirmed its opposition to private ownership of the complex by adopting a resolution "putting the world on notice that there are serious problems and questions concerning any development of the homes * * * " and ordered this resolution placed in the Land Evidence Book by the town clerk.

Representatives from Woodland appeared before the Coventry Planning Commission on October 25 and November 29, 1978, seeking an acknowledgment from the commission that it lacked jurisdiction over a plan for subdividing the property or, in the alternative, that it would accept the proposed land-division plan. On November 29, 1978, the planning commission ruled that it had no authority to accept the proposed site plan because of the failure of its proponents to comply with the procedures established by the subdivision regulations. In its decision the commission suggested that even if Woodland had complied with the procedures, any acceptance of Woodland's plan was problematical.

Subsequent to acquiring the property, Woodland sought a permit from the Coventry Building Inspector to erect carports for the seven houses that lacked garages. The building inspector refused to issue the permit, and on March 13, 1979, Woodland appealed this decision to the Zoning Board of Review. On July 9, 1979, the board rendered a decision affirming the denial of the permit on account of a potential threat to the health, safety, and welfare of the prospective residents of the development. The board also concluded that even though the government possessed a nonconforming[3] use from 1958 to 1974, this use was discon-

1. The property was condemned as a single lot and recorded by the town as Assessor's Plat 31, Lot 72.

2. The Woodland Development Company specializes in buying government property, rehabi-

litating it, and offering it for sale to the general public.

3. Article IX, § 1, of the Coventry Zoning Ordinance establishes acreage requirements for residential housing. The parties agree that the

tinued by reason of the government's deactivation of the property.[4]

Woodland transferred a parcel of land and a house located thereon to William J. Yamin (Yamin) on June 14, 1979; the parcel was described by metes and bounds. Further division of the property occurred on July 23, 1979, when Woodland conveyed four parcels of land with all buildings and improvements thereon to the Woodland Homeowners' Association. The town responded by initiating this suit, claiming that the Yamin conveyance violated town zoning ordinances and subdivision regulations. Woodland filed a counterclaim by asking for a declaratory judgment that the complex was not subject to either the zoning ordinances or the subdivision regulations. Woodland also sought a ruling that the town council's resolution and a notice of lis pendens filed by the municipality be declared void and expunged from the land-evidence records. The trial justice denied the town's claim for relief and provided the declaratory relief sought by Woodland. This appeal followed.

■ As a preliminary matter, we note that the United States and its various instrumentalities are exempt from those local zoning restrictions that are contrary to federal statutes or purposes. *See town of Groton v. Laird*, 353 F.Supp. 344 (D.Conn.1972); *Dupuis v. Submarine Base Credit Union, Inc.*, 170 Conn. 344, 365 A.2d 1093 (1976); 8 McQuillin, *Municipal Corporations* § 25.16 at 42 (3d ed. 1976). *See also* 10 U.S.C.A. § 2663 (1975). In any event, the parties are agreed that since the houses were constructed prior to the town's first zoning ordinance in 1962, the United States possessed a legal nonconforming use. *See also* G.L.1956 (1980 Reenactment) § 45–24–10.

■ Furthermore, it is clear that a nonconforming use is an alienable property interest. *City of Revere v. Rowe Contracting Co.*, 362 Mass. 884, 885, 289 N.E.2d 830, 831 (1972). A mere change in ownership

does not destroy the nonconforming use. *See Hawkins v. Talbot*, 248 Minn. 549, 80 N.W.2d 863 (1957); *Gibbons & Reed Co. v. North Salt Lake City*, 19 Utah 2d 329, 431 P.2d 559 (1967); *City of Miami Beach v. Arlen King Cole Condominium Ass'n, Inc.*, 302 So.2d 777 (Fla.App.1974), *reh. denied*, Fla., 308 So.2d 118 (1975); *Village of Skokie v. Almendinger*, 5 Ill.App.2d 522, 126 N.E.2d 421 (1955); *see generally, Zoning: Change in Ownership of Nonconforming Business or Use as Affecting Right to Continuance Thereof*, 9 A.L.R.2d 1039 (1950).

The town does not dispute the fact that the federal government in its operation of the complex had a legal nonconforming use for the property. Rather, the town contends that the use was abandoned when the government allowed the property to remain unused from 1974 until it was sold in 1978. It is this abandonment, argues the town, that prevents Woodland from using the property for housing.

■ We have previously stated that the mere discontinuance of a nonconforming use for a period of time does not constitute an abandonment of that use. *Town of East Greenwich v. Day*, R.I., 375 A.2d 953, 956 (1977); *A.T. & G., Inc. v. Zoning Board of Review of North Smithfield*, 113 R.I. 458, 463, 322 A.2d 294, 297 (1974); *Richards v. Zoning Board of Review of Providence*, 100 R.I. 212, 218, 213 A.2d 814, 817 (1965). There must also exist an intent to abandon. *See Richards v. Zoning Board of Review of Providence*, 100 R.I. at 219, 213 A.2d at 817. In *Richards*, we found no intent to abandon a nonconforming bakery notwithstanding the fact that during an eleven-year period the owner of the premises carried on no baking operations. However, the bakery ovens were left in place, and no structural alterations were made which might have prevented the eventual reestablishment of the bakery.

---

houses presently located on the property are not in conformity with this requirement.

4. Under the provisions of art. VIII, § 3, of the Coventry Zoning Ordinance, if a nonconforming use is discontinued for one year, that use is terminated.

Proof of abandonment must be borne by the asserting party. Here, the town failed to prove that the federal government intended to abandon its nonconforming use and the vested rights that are incidental to that use. Moreover, one of the documents prepared under the auspices of the General Services Administration described the subject property as a "pre-existing nonconforming use" and recommended that the property be disposed of by public sale "for its continued highest and best use, single family housing." Furthermore, we are not impressed with the town's contention that the individual sales of lots to private persons rather than to public employees would improperly enlarge the scope of the nonconforming use. The basic use of the parcel will remain the same: the lots and dwellings will now service the needs of families who will live in the single-family units but whose owners will soon become taxpayers of the town of Coventry. We need only repeat what we have said before: nonuse is not conclusive evidence of abandonment.

The final facet of the town's appeal concerns its claim that the trial justice erred when he ruled that the subdivision regulations promulgated by the planning commission were inapplicable to the property purchased by Woodland.[5]

We pause here to examine briefly the jurisdictional limits of local planning commissions. Under the provisions of G.L.1956 (1980 Reenactment) §§ 45–23–1 through 45–23–23 (the enabling act), local cities and towns are authorized to establish planning commissions to regulate the subdivision of land within their boundaries. In *Taylor v. Marshall*, R.I., 376 A.2d 712 (1977), we ruled that the thrust of the enabling act was to regulate the subdivision of land when access to the newly created parcels would require the construction of a street. *See also Slawson v. Zoning Board of Review of Barrington*, 100 R.I. 485, 217 A.2d 92 (1966).

On May 5, 1979, the Legislature, in an obvious response to *Taylor*, amended the enabling act by removing from the definition of subdivision any mention of the necessity of establishing a new street.[6] That section now reads:

> "The word 'subdivision,' shall mean the division of a lot, tract or parcel of land into two (2) or more lots, tracts, parcels, or other divisions of land for sale, lease, or other conveyance, or for development, simultaneously or at separate times.

> "It also includes resubdivision and, when appropriate to the context, shall relate to the process of subdividing or to the land subdivided."

The town has argued that the effect of this amendment was to place under the jurisdiction of the planning commissions those matters that were excluded by *Taylor*, that is, any subdivision of land regardless of whether a new street is needed. Yet even if we were to accept the town's analysis, we must still fault the planning commission's action.

The trial justice found as a fact that the 8.16-acre parcel had already been developed by the government prior to sale to Woodland. Inasmuch as G.L.1956 (1980 Reenactment) § 45–23–1 applies only to the subdivision of land, we must agree with the trial justice that the Coventry Planning Commission is without jurisdiction to prevent the sale of lots to individuals.[7] Despite the 1979 amendment to the enabling act, in our

---

5. The town's argument to the effect that the Attorney General should have been notified of the suit is without merit.

6. *See* P.L.1979, ch. 223, § 1.

7. As a result of our disposition of the subdivision issue, we cannot fault the trial justice's refusal to expunge from the town's Registry of Deeds a so-called subdivision plan that was attached to the July 23, 1979 deed in which Woodland conveyed the four parcels of land

and buildings and improvements thereon to the Woodland Homeowners' Association. Although the plan carries a title "Subdivision of 'The Woodlands,'" in actuality it is nothing more than a depiction of the site plan that was prepared by the Army Engineers when the complex was occupied by the military. All that the so-called subdivision and site plan indicates is the position of the various houses and the respective areas of the lots that compose the complex.

opinion, the holding of *Taylor* is apposite to the present case. "[I]t [the act] has no bearing on sales of existing houses such as the proposed sale in the case at bar and, therefore, the board is without jurisdiction to approve or disapprove the sale." *Taylor v. Marshall*, R.I., 376 A.2d at 716.

 Subdivision legislation attempts to control the development of vacant land by requiring that streets within the development shall be properly constructed and logically related to the existing street system. A developer may be required to provide the basic services essential to modern living such as the construction of water, sewer, and other utilities, mains, pipes, or connections. *See* 1 Anderson, *Law of Zoning*, § 1.115 at 22–23 (2d ed. 1976). Here, it is obvious that the vacant land which ultimately became known as the Capehart Family Housing Area was developed long before Woodland came to Coventry.

The town's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to Superior Court.

SHEA, J., did not participate.