Hugh M. JONES, Jr. et al.

v.

Herbert F. ROMMELL, et al.

No. 84–431–M.P.

Supreme Court of Rhode Island.

Feb. 24, 1987.

James Purcell, Tillinghast, Collins & Graham, Providence, for plaintiffs.

Kathleen Managhan, Corcoran, Peckham & Hayes, and Turner C. Scott, Kelly & Scott, Newport, for defendants.

OPINION

WEISBERGER, Justice.

This petition for certiorari was brought to review a judgment entered in the Superior Court reversing a decision of the Zoning Board of Review of the City of Newport. We granted review on January 10, 1985. The plaintiffs, Hugh M. Jones, Jr., and Jeffrey M. Farrar, individually and in their capacities as general partners of Mill Street Partners, a limited partnership, and the plaintiff Mill Street Partners, as the owner of property located at 75 Mill Street, Newport, Rhode Island, filed a complaint in Superior Court alleging that the defendants Herbert F. Rommell, John J. Greichen,

John J. Crowley, Jr., Betsy Ray, and Roland Chase, in their capacities as members of the Zoning Board of Review of the City of Newport, erred in revoking a building permit previously issued to the plaintiffs and further alleging that the defendant Ann B. Canole Twomey, an owner of property located in the mill's vicinity, had no standing to challenge the validity of the permit. The plaintiffs sought a stay of the zoning board's decision as well as an injunction to prevent the defendants, Roy B. Anderson, in his capacity as building official of the city of Newport, and Francis B. Edwards, in his capacity as zoning officer of the City of Newport, from revoking the building permit. The relevant facts are as follows.

On April 20, 1984 the Newport building inspector issued plaintiffs a building permit to convert property located at 75 Mill Street from a lumber mill into an inn. Prior to the issuance of the permit, plaintiffs sought city approval of their proposed parking plan for the twenty-three-unit inn and were advised that their plan was in accordance with the off-street parking requirements under § 1270.01 of the Newport City Code. The city reached this determination by applying the credit-parking formula utilized in its implementation of § 1270.01.[1] The defendant Ann B. Canole Twomey filed an appeal from the issuance of the permit to the Newport Zoning Board of Review on May 9, 1984. Following a

hearing, the zoning board rendered a decision sustaining Twomey's appeal and ordering revocation of the permit. The board made two findings of fact relevant to this petition: (1) the building inspector correctly concluded that under the 1977 zoning ordinance six parking spaces were required for former mill use and (2) prior to 1977 the mill had at least four valid parking spaces.[2] The board further determined that application of the credit-parking formula was not permitted under § 1270.01.

In reversing the zoning board, the Superior Court held that § 1270.01, although somewhat ambiguous, allows application of the credit-parking formula. Finding no evidentiary support for the board's finding that four valid parking spaces existed on the premises prior to the 1977 amendment to § 1270.01, the trial justice reversed that finding as clearly erroneous. Further, the trial justice found that equitable principles militated against revocation of the building permit since plaintiffs incurred substantial obligations in good-faith reliance on the issuance of the permit.

 This case presents for our determination the question of whether the credit-parking policy is allowable under § 1270.-01. We hold that it is not. It is well settled that the rules governing statutory interpretation are equally applicable to the interpretation of an ordinance. *Mongony v. Bevilacqua*, 432 A.2d 661 (R.I.1981);

1. The credit-parking formula was applied by the building inspector as follows. The planned inn required one parking space for each of its twenty-three rooms plus an additional space for its employees, for a total of twenty-four required spaces as well as a loading zone. Under the credit-parking formula, the number of parking spaces that the mill should have had in 1977 but did not have by virtue of its nonconformance was subtracted from the amount required. Determining that the mill should have had six parking spaces and a loading zone in 1977 but that it actually had neither the six parking spaces nor a loading zone, the building inspector reduced the amount of spaces required under § 1270.01 for the proposed new use by "grandfathering in" the prior nonconformity of six spaces and a loading zone and crediting the property with those spaces. As a result, it was determined that the proposed inn would require only eighteen parking spaces and would not require a loading zone.

2. The board reached this conclusion relying on testimony that cars had in fact been parked on mill property, although it remained undisputed that the mill had no specifically designated parking spaces. This finding had the effect of reducing plaintiffs' parking credit from six spaces to two, thereby requiring that the mill have four additional spaces. The board further found that the building plan proposed twenty-seven, rather than twenty-three, guest units and that the Mill Street property is within the Historic Hill Redevelopment Plan. The latter two findings were reversed by the trial justice. Since these two issues have not been raised in defendants' brief, we shall not address them here. *See DaRosa v. Carol Cable Co.*, 121 R.I. 194, 397 A.2d 506 (1979); *Calcagno v. Calcagno*, 120 R.I. 723, 391 A.2d 79 (1978); *Rhode Island Hospital Trust National Bank v. Israel*, 119 R.I. 298, 377 A.2d 341 (1977).

*Town of Warren v. Frost,* 111 R.I. 217, 301 A.2d 572 (1973). An ordinance, therefore, must be construed in a manner consistent with its stated intent. *Hydron Laboratories, Inc. v. Department of Attorney General,* 492 A.2d 135 (R.I.1985); *Valley Resources, Inc. v. South County Gas Co.,* 486 A.2d 1076 (R.I.1985); *State v. Gonsalves,* 476 A.2d 108 (R.I.1984).

Section 1270.01 provides as follows:

*"It is the intent of this chapter to ensure that off-street parking and loading spaces are provided to accommodate the motor vehicles of all persons normally using or visiting a use or structure at any one time.* For any permitted use hereafter established, such spaces shall be provided in accordance with the standards hereinafter specified. Any off-street parking and loading provision existing shall conform to these standards to the extent that they conform at the time of the adoption of this Zoning Code. All spaces required to be provided by this chapter shall be permanently maintained and made available for occupancy in connection with and for the full duration of the use of land or structures for which such spaces are herein required. If any existing use of land or a structure is changed to a use requiring additional spaces to comply with this chapter, such additional spaces shall be provided for the new use in accordance with the standards hereinafter specified." (Emphasis added.)

Since the intent underlying the enactment of § 1270.01 is patently clear, we must endeavor to effectuate that intent in interpreting the language on which the credit-parking policy is based.

The credit-parking policy was derived from the construction of the following sentence: "If any existing use of land or a structure is changed to a use requiring additional spaces to comply with this chapter, such additional spaces shall be provided for the new use in accordance with the standards hereinafter specified." The only reasonable interpretation of this sentence requires the provision of additional parking spaces in conformity with zoning code stan-

dards for the new use whenever the use of property is changed to a use that requires additional spaces. Any other construction of this provision would be contrary to the plain language of the ordinance and its stated intention. Further, such an interpretation is the only one consistent with basic principles of zoning law.

■ A change of use results when the proposed use is "substantially different from the nonconforming use to which the premises were previously put * * *." *Souza v. Zoning Board of Review of Warren,* 104 R.I. 697, 699, 248 A.2d 325, 327 (1968). A change of use eliminates the exemption of a nonconforming use from recently enacted zoning ordinances. Thus, although an established use may continue notwithstanding the subsequent enactment of a prohibitory zoning ordinance, any change of use mandates compliance with the zoning regulations in effect at the time the change is made. *See* 1 Anderson, *American Law of Zoning* § 6.36 at 558 (3d ed. 1986). The sentence in question refers only to changes of use. Therefore, under well-settled principles of zoning law, the change of use precludes exemption from compliance with effective zoning regulations. In other words, after a change in use, property owners should not be entitled to any "credit" representative of prior noncompliance.

■ The plaintiffs, however, assert that they incurred substantial expenses because of their good-faith reliance on the apparently validly issued building permit and that, therefore, equitable considerations prohibit the permit's revocation. In *Shalvey v. Zoning Board of Review of Warwick,* 99 R.I. 692, 210 A.2d 589 (1965), we held that equity immunizes a building permit from cancellation when the property owner incurs substantial obligations in good-faith reliance on the issuance of the permit. *See also A. Ferland & Sons, Inc. v. Zoning Board of Review of East Providence,* 105 R.I. 275, 251 A.2d 536 (1969); *Tantimonaco v. Zoning Board of Review of Johnston,* 100 R.I. 615, 218 A.2d 480 (1966). Although this rule has only been applied to situations in which a subsequent amend-

ment to a zoning ordinance prohibits the use authorized under the permit, we are of the opinion that equitable considerations mandate application of the rule to cases like the one at bar.

Here the use of the credit-parking formula was based upon a commonly accepted interpretation of § 1270.01 of the Newport City Code. The building inspector and city solicitor's office have consistently applied this formula in their administration of off-street parking requirements since 1981. The zoning board's rejection of credit parking, therefore had the same effect upon plaintiffs' building permit as a later amendment to § 1270.01 would have had if that amendment rejected credit parking. The case before us varies in no important respect from our decisions in which a subsequent zoning ordinance revokes a use valid when the permit was issued.[3] Since the factual difference between the instant case and our decisions respecting the effect of subsequently enacted zoning amendments is a difference without a material distinction, we hold that the rule first enunciated by this court in *Shalvey, supra,* governs the case at bar.

The trial justice noted in his decision that plaintiffs expended "enormous sums of money" in good-faith reliance on the issuance of the permit and the historic interpretation of § 1270.01 and that revocation of the permit would cause plaintiffs to suffer irreparable harm. The trial justice then correctly concluded that revocation of the building permit would be contrary to general equitable principles. The trial justice's conclusion in this regard is amply supported by the record, and therefore, it is not within our province to reverse it. *See Mendonsa v. Corey,* 495 A.2d 257 (R.I.

1985); *Redman v. Zoning and Platting Board of Review of Narragansett,* 491 A.2d 998 (R.I.1985).

 The trial justice further determined that the zoning board's finding that four parking spaces existed at the mill property prior to 1977 was clearly erroneous. We agree. Because formulation of the parking credit has uniformly been based on whether formally designated parking spaces in conformity with the zoning ordinance existed in 1977 and because it is undisputed that there has never been such a formal designation on the property, the fact that cars may have been parked there with or without permission has no effect on the grandfathered credit as it has consistently been applied under § 1270.01. The board's finding that for credit-parking purposes four parking spaces were in existence prior to 1977 is therefore completely unsupported by competent evidence. *See Ervin v. Ervin,* 458 A.2d 342 (R.I.1983); *Caswell v. George Sherman Sand & Gravel Co.,* 424 A.2d 646 (R.I.1981); *Barber v. Exeter-West Greenwich School Committee,* 418 A.2d 13 (R.I.1980).

For the reasons stated, the petition for certiorari is granted in part and denied in part. The judgment of the Superior Court is hereby affirmed in part and reversed in part. The papers in the case are remanded to the Superior Court with our decision endorsed thereon.

---

**3.** Although in *Zeilstra v. Barrington Zoning Board of Review,* 417 A.2d 303 (R.I.1980), we stated that because a building inspector lacks authority to issue a permit for a use not authorized by the zoning code, the issuance of a permit for an unauthorized use is void, we believe that the consistent interpretation of § 1270.01 by the city solicitor as well as the building inspector over a period of time, reasonably inducing plaintiffs' good-faith reliance on the issuance of the permit, distinguishes this case from *Zeilstra.* Moreover, *Zeilstra* involved a nonpermitted use. In the instant case only an ancillary regulation relating to off-street parking is involved.