**WASHINGTON ARCADE ASSOCIATES** [1]

v.

**ZONING BOARD OF REVIEW OF the TOWN OF NORTH PROVIDENCE.**

No. 85–441–M.P.

Supreme Court of Rhode Island.

July 13, 1987.

---

**1.**  While this appeal was pending, the property that is the subject of this litigation was sold to the Washington Arcade Associates.  The Associates have been substituted as petitioners pursuant to our order of June 19, 1986.  The original petitioner was Emelio Giudici's widow, Fernanda Giudici.

Domenic Tudino, Providence, Justin T. Shay, Taft & McSoley, Cranston, for plaintiff.

Anthony Gallone, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This zoning controversy relates to a parcel of real estate situated in the town of North Providence and a Superior Court justice's approval of a finding made by the North Providence Zoning Board that there had been an abandonment of the legal nonconforming use that had attached to the property in 1965. At that time the area in which the parcel is situated was designated by the town zoning ordinance as "residential limited."

The record reveals that in 1940 Emelio Giudici formed a corporation called the New England Cast Stone Company and began doing business on a parcel of land containing seven lots, located in North Providence at 25 Rose Street. There the corporation, in an "A-frame" structure, manufactured a variety of precast concrete products such as concrete coping, coping for swimming pools, and bumpers for parking lots, and sold mesh and iron products. In 1963 a wooden shed that was located alongside the "A-frame" structure was torn down and a masonry structure thirty-six feet by forty-eight feet was erected in

its place. Subsequently in 1965 the area in which the New England Cast Stone Company was located was rezoned and designated "limited residential."

The precasting operation came to a halt in 1975 when Emelio Giudici became ill. When he died, title to the real estate and business was somehow vested in his widow, Fernanda. It appears that, in time, the "A-frame" structure became the target for vandals.

A police report dated October, 1978, indicated a break into a "storage warehouse" that caused "extensive damage." The officer indicated in the report that the interior of the premises was in a shambles. Again, another police report made in early November, 1979, recorded a fire of undetermined origin in the precast concrete manufacturing portion of the premises. It was reported that the overhead cranes had been severely damaged and that the building was vacant at the time of the incident. Sometime in 1979 Mrs. Giudici applied for a building permit to restore the premises. The application was approved and the project began. However, the Giudicis' financial conditions took a turn for the worse and the project came to a halt. The building project apparently had reached a point where 5,000 of a structure encompassing 7,500 square feet had been renovated.

Sometime in 1984 Mrs. Giudici sought permission from the town's building inspector to resume the project and restore the entire structure to its original size. The inspector refused permission and Mrs. Giudici sought the assistance of the zoning board. A public hearing was held at the town hall in mid-March 1984. The following May the board issued a decision in which it rejected Mrs. Giudici's appeal because the board found that manufacturing of cement products on the premises had ceased in mid–1970 and that the building had fallen into disrepair. Consequently, the board found that the nonconforming use had been abandoned and upheld the inspector's decision.

In Superior Court the trial justice, after reviewing the record of the hearing before

the board, concurred with the board's conclusions, observing that the Giudicis's overt failure to act for a number of years implied that they were "neither claiming nor retaining any interest in the subject matter of the abandonment." According to the trial justice, their overt failure to maintain the property was evidence of their intent to abandon its use.

This court, time and time again, has emphasized that the mere discontinuance of a nonconforming use for a period of time does not, ipso facto, constitute an abandonment of that use. *Town of Coventry v. Glickman*, 429 A.2d 440 (R.I. 1981); *Town of East Greenwich v. Day*, 119 R.I. 1, 375 A.2d 953 (1977); *A.T. & G., Inc. v. Zoning Board of Review of North Smithfield*, 113 R.I. 458, 322 A.2d 294 (1974); *Richards v. Zoning Board of Review of Providence*, 100 R.I. 212, 213 A.2d 814 (1965). Nonuse in and of itself is insufficient. In law, to establish abandonment, proof of two factors is required; one, intent to abandon and two, some overt act, or failure to act, which would lead one to believe that the owner neither claims nor retains any interest in the subject matter of the abandonment. *Richards*, 100 R.I. at 218, 213 A.2d at 817; 1 Anderson, *American Law of Zoning* § 6.65 at 634 (3d ed. 1986). An involuntary interruption of a nonconforming use such as an economic depression or a fire does not establish the requisite intent to abandon because the cessation of the use is not a voluntary act of the user. 1 Anderson, § 6.66 at 639–641.

The burden of proving abandonment is on the asserting party. In this dispute the burden rests with the town. *Town of Coventry v. Glickman*, 429 A.2d at 443. In its decision the zoning board noted the cessation of the manufacture of stone products in the mid–1970s and the subsequent disuse of the premises and failure to repair. Consequently, the board expressed the opinion that the nonconforming use had

been abandoned and the premises could only be used for residential purposes. In reaching this conclusion, the board obviously was relying on article VIII, section 3 of the zoning ordinance which specifies that a discontinuance of a legal nonconforming use for "a period of one full year" bars the resumption of that use.

The Superior Court justice, in upholding the board's action, went on to observe that even though there was a continuous use of the premises, that use did not involve the manufacture of cast stone products. Thus, in the trial justice's opinion, the Giudici family's use of the premises was restricted to residential uses. The trial justice, in reaching this conclusion, obviously was relying upon section 5 of article VIII, which provides that a legal nonconforming use can only be changed to a use that conforms to the provisions of the ordinance. Before us the town, in seeking to uphold the actions of the trial justice and the zoning board, relies upon the language found in article VIII, section 5. In doing so, the town obviously has overlooked this court's holding in *A.T. & G., Inc.*, 113 R.I. at 463, 322 A.2d at 296. In considering ordinances such as sections 3 and 5, we have observed that the municipal legislature, in effectuating their enactment, is acting beyond its authority when it seeks to limit a specific right granted by the enabling legislation, to wit, G.L. 1956 (1980 Reenactment) § 45–24–15.[2] There the legislature specifically stated that no ordinance enacted pursuant to the provisions of chapter 24 of title 45 shall prevent or be construed to prevent the continuance of the use of any building or improvement for any purpose as to which such building or improvement was lawfully devoted at the time of the enactment of the ordinance. The 1965 zoning ordinance was enacted pursuant to the grant of authority given by the enabling legislation. Consequently, the reliance of the trial justice and the zoning board upon the restrictive provi-

---

**2.** Recently in *M.B.T. Construction Corp. v. Edwards*, 528 A.2d 336 (R.I., 1987), this court nullified a portion of Newport's zoning ordinance that called for the termination of a nonconforming use status of a fire-damaged structure unless reconstruction was initiated within a year of the

conflagration and completed prior to the fire's second anniversary. Such a restriction was declared to be invalid and void because it attempts to restrict the savings provision of the enabling act.

sions of the North Providence Zoning Ordinance is totally misplaced and erroneous.

 We are of the opinion that the building inspector and other responsible officials in the town of North Providence had fallen far short of this burden they assumed when they asserted that the Giudici family had abandoned their right to have their Rose Street property accorded the status given a legal nonconforming use. Here the record, which is replete with acts of vandalism including a fire committed within various portions of the premises, also demonstrates a conscious effort on the part of the Giudici family to restore the premises to its original condition. Of some note is the comment of a town solicitor who, when approving the 1979 restoration project of the Giudicis, referred to their premises as having a legal nonconforming use. It is obvious that the Giudicis' efforts to complete the project were set back when fiscal difficulties confronted them. When the cast stone manufacturing project came to a halt in 1975, the corporation continued to sell its inventory and maintained records of its corporate activity. The record clearly indicates that several industrial enterprises were found to be operating within the Giudici parcel at one time or another during the period in question. Police reports indicate that vandalism incidents occurred in the mid-1970s at 25–A Rose Street and again at 25–B Rose Street. These different addresses are further proof that there were ongoing industrial or manufacturing activities taking place on the parcel designated as 25 Rose Street. All of the evidence adds further support to the testimony given to the board by Mrs. Giudici and her son who insisted before the board that the Giudici family never intended to abandon the nonconforming uses that were taking place on the Rose Street parcel. We believe that the various uses that have taken place on the parcel through the years all fall within the multitude of so-called "industrial uses" set forth in article II, section 12 of the North Providence ordinance.

Since a nonconforming use constitutes an alienable property interest, *Town of Coventry v. Glickman,* 429 A.2d at 442, the present petitioners are entitled to complete the restoration project pursuant to the terms of article IX, section 3, which, in its pertinent portion, provides that if the nonconforming premises are destroyed, demolished or damaged, they may be reconstructed or repaired provided total floor area and nonconformity are not increased in any manner.

The petition for certiorari is granted, the judgment of the Superior Court is quashed and the record in this case is remanded to the Superior Court with a direction to remand the case to the North Providence Zoning Board for further proceedings in accordance with this opinion.