DECISION
Before this Court is an appeal of a decision by the Zoning Board of Review (Board) of the Town of Hopkinton. Patricia Pezzullo (Appellant) seeks reversal of the Board's October 12, 2007 decision upholding the decision of a specially appointed zoning official denying the issuance of a zoning certificate. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
Appellant owns property located at 64 Laurel Street in Hopkinton, Rhode Island. A previous entity, Ashaway Cement Products (ACP) owned the property from the mid 1960's and manufactured cement products on the premises when, in 1971, the Town enacted a Zoning Ordinance (Ordinance) designating the property as RFR-80, or a "rural, farming, residential" zoning district. Accordingly, the use of the property was a legal nonconforming use. Sometime in 1987 or 1988, ACP moved its operation to the Town of Richmond, however, it left the *Page 2 
building in which it was operating intact.[1] Since moving, ACP rented the building to various commercial entities, including a trucking business, a steel cutting entity, and a well-drilling business.
On June 6, 1988, an application to rezone the property was submitted to the Hopkinton Town Council by Leo P. Roode, III, on behalf of landlord ACP. (Town Council Meeting Minutes, June 6, 1988, Appellees' Ex. 1.) The application sought to change the zoning from RFR-80 to "Light Industrial." (Id.) At the time of the application, Mr. Roode was utilizing a portion of the property to store his garbage trucks, port-a-johns, septic pumping truck, and rollaway dumpsters in conjunction with his trash hauling business operating under the name RPE Disposal (RPE). The application was not considered because there was no recommendation from the Planning Board as required by the Ordinance. Following the Town Council meeting, the building official sent a cease and desist letter to ACP advising it that RPE's "use on [64 Laurel Street] is not a lawful extension of the nonconforming use existing when the Ordinance was enacted. It is a change of use and, therefore, subject to Chapter 28, Article VI [sic], Section 3." (Appellant's Appendix of Exhibits at 18.) Mr. Roode later withdrew his application.
Another entity to rent the Laurel Street premises was Hawkins Well and Pump, which installed wells, pumps, and related equipment. The record contains an affidavit from Albert Hawkins, the principal of Hawkins Well and Pump, which indicates that "[a]round 1987 or 1988 [sic] I had occasion to rent the property from Ashaway Cement Products. This occurred just after they moved their operation to Richmond [sic] Rhode Island." (Appellee's Memorandum, Exhibit 12.) Mr. Hawkins also noted in his affidavit "I operated my well drilling and pump business from the site and remained as a tenant until 1993." (Id.) Various other entities also *Page 3 
rented the premises and in the mid 1990's, Todd and Tina Sposato operated a steel-cutting business called TNT Metal Fab, Inc. at the premises.
Todd and Tina Sposato applied for a zoning certificate in July of 1997 and Bart Fraser, a former zoning official, signed off on the certificate, noting that "the intended use of the property is in accordance with the provisions of the Hopkinton Zoning Ordinance." The form did note the property was a RFR-80 zone district.
In 1999, ACP evicted Todd and Tina Sposato for non-payment of rent, and then sought to sell the property. The property was marketed as a nonconforming use. A prospective buyer, Brett C. Lill, wanted to store trucks, other vehicles, and equipment on the property, and sought a zoning certificate allowing such use. Charles Mauti, a zoning and building official at the time (who is the within Appellant's husband), in an August 28, 2000 letter to Lill's attorney, denied the zoning certificate, but indicated "[i]t is clear that as a nonconforming business in the area, Ashaway Cement Products can continue its primary operation — i.e., the manufacture and distribution of cement products." Lill appealed this decision to the Board, which denied the appeal "upon the ground that the primary use of the premises by Ashaway Cement Products at the time the nonconforming use was established was one of light manufacturing." Lill and ACP appealed to this Court, and later amended their complaint to add a declaratory judgment count. In the meantime, Lill sought a special use permit, which was also denied by the Board and appealed to the Superior Court. The Court denied Lill's claims, noting that because the record and memorandum before the Court was "scant," Lill didn't meet his burden of showing that the proposed use was substantially similar to the prior nonconforming use. Lill v.Algiere, 2004 WL 603505 (March 15, 2004). *Page 4 
In 2004, Parity Properties, LLC (Parity) purchased the property from ACP. The sales agreement contained a notice declaring that the property "has been determined to be a preexisting nonconforming use, previously the home of Ashaway Cement Products, Inc. . . ." The within Appellant owns Parity. She individually took title to the property soon after Parity's purchase from ACP.
In 2006, Tyrel E. Rhodes, Appellant's intended lessee, sought a zoning certificate to manufacture and sell cement fireplaces at the property. Samuel J. Shamoon, the Town's specially appointed zoning official, denied the zoning certificate, finding that ACP had abandoned the cement manufacturing use. Rhodes and Pezzullo appealed to the Zoning Board of Review. The Board denied the appeal, finding, inter alia, that ACP "discontinued its nonconforming use during the 1987-1988 timeframe when it departed for Richmond." The Board further found that the changes in use "show an overt act to abandon the cement manufacturing use [sic] and further that the property owner failed to act and that such action or inaction would lead one to believe that the owner neither claims nor retains any interest in continuing the legally nonconforming use."
Appellant filed a timely appeal of the decision of the Board pursuant to § 45-24-69. She advances two main arguments in support of her appeal. First, Appellant argues that the Board's findings are invalid because "the board erroneously presumed that ACP could avoid abandonment only if its tenants continued manufacturing cement products." Second, Appellant argues the Board erred when it "presumed that all equipment and accessories had to remain at the property since 1988 to support what amounts to a `turn-key' cement manufacturing operation." Appellant contends that these errors led the Board to a legally erroneous conclusion, and asks that this Court reverse the Board's decision upholding the finding that ACP abandoned the *Page 5 
nonconforming use of cement product manufacturing. For the reasons below, the Appellant's arguments are unavailing and the decision of the Board is affirmed.
 II Standard of Review
The Superior Court's review of a zoning board's decision is governed by § 45-24-69. Subsection (d), in relevant part, provides as follows:
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
The Court's review of the Board's decision is not de novo. See Munroe v.Town of East Greenwich, 733 A.2d 703, 705 (R.I. 1999) (quotingKirby v. Planning Board of Review of Middletown, 634 A.2d 285, 290 (R.I. 1993)) (recognizing "`traditional judicial' review standard that is applied in administrative-agency actions"). Instead, its appellate review is limited to an examination of "`the entire record to determine whether `substantial' evidence exists to support *Page 6 
the board's findings.'" Mill Realty Assocs. v. Crowe, 841 A.2d 668, 672
(R.I. 2004) (quoting DeStefano v. Zoning Bd. of Review, 122 R.I. 241,241, 405 A.2d 1167, 1170 (1979)). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, [or an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Rev. of NorthKingstown, 818 A.2d 685, 690 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand and Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). Should the Court find that competent evidence exists in the record to support the Board's findings, its decision must be affirmed. Munroe,733 A.2d at 705. Questions of law, however, are not binding upon a reviewing court and may be reviewed to determine what the law is and its applicability to the facts. Carmody v. Rhode Island Conflict of Interest Com'n,509 A.2d 453, 458 (R.I. 1986).
 III Analysis A Lawfully Existing Nonconforming Uses
In Duffy v. Milder, 896 A.2d 27 (R.I. 2006), the Court noted:
 Our review of the case law reveals that most nonconforming use cases arise in the context of amendments to the local zoning code that render illegal a longstanding use of a particular piece of property. See Town of Richmond v. Wawaloam Reservation, Inc., 850 A.2d 924 (R.I. 2004); Rico Corp. v. Town of Exeter, 787 A.2d 1136 (R.I. 2001); Jones v. Rommell, 521 A.2d 543 (R.I. 1987). We have held that in these situations, a nonconforming use "is protected because it existed lawfully before the effective date of the enactment of the zoning restrictions and has continued unabated since then." Rico Corp., 787 A.2d at 1144 (citing Town of Scituate v. O'Rourke, 103 R.I. 499, 503, 239 A.2d 176, 179
(1968)). Duffy, 896 A.2d at 38. *Page 7 
Our Supreme Court has also noted "[w]e strictly construe the scope of nonconforming uses because we view them `as detrimental to a zoning scheme, and the overriding public policy of zoning . . . is aimed at their reasonable restriction and eventual elimination.'" Town ofRichmond, 850 A.2d at 934-935 (citing Rico Corp.,787 A.2d at 1144-1145).
Appellant directs the Court's attention to Richards v. Zoning Board ofReview, 213 A.2d 814, 100 R.I. 212 (1965), and argues that it "sets forth the rules that govern this case." Appellant interprets theRichards case to hold that in all abandonment cases:
 First, abandonment will not take place if property has not been so altered as to prevent resumption of the nonconforming use. Second, property may be used for other purposes without abandoning a prior nonconforming use as long as the owner does not intend to permanently use the property for a higher use or put it into a higher zoning classification. Third, an owner's statements of intent not to abandon constitute competent evidence supporting such a finding.[2] (Appellant's memo at 19.)
Appellant notes that in Richards, an applicant sought to run a catering business out of the first floor of a property previously used as an industrial bakery. The bakery was in existence before the enactment of the first zoning ordinance in Providence in 1923. The property was vacant from 1941 to 1943, and then from 1943 to 1946 the property was used to store caskets. From 1946 until 1953 a bakery business resumed at the premises. On September 21, 1951, a new zoning ordinance was approved which classified the subject property as an R-4 multiple dwelling zone.
Between 1953 and 1964, the premises was used for the storage of linoleum and for the operation of a shirt pressing business. In 1965, the owner of the premises requested a certificate *Page 8 
of occupancy to use the first floor of the building as a catering business. The Court upheld the Board's decision, holding that the evidence supported its finding that the premises had been used as an industrial bakery, which, under the ordinance was an M-1 legal nonconforming use. The Court further held that because the applicant sought to substitute a C-2 use, a more restricted use under the ordinance and one permitted as a substitution, the Board's decision authorizing such was "neither arbitrary nor an abuse of discretion or error, unless the right to such legal nonconforming use was lost by abandonment."
As to abandonment, the Court found that — because a bakery oven was still on the premises, there was no evidence that the premises was altered as to prevent the use as an industrial bakery, and the applicants/owners stated that neither they, nor their parents before them, had any intention of abandoning the use of the first floor as a bakery — it could not conclude that "the board was not warranted in determining, as it implicitly did, that there had not been an abandonment of the existing legal nonconforming use." Importantly, the Court also noted that the storage of linoleum was an M-1 use, and a shirt pressing operation was permitted as a C-4 use, and because both such zones were a less restricted classification than the C-2 zone required for a catering establishment, there was no evidence that the applicant "ever intended to use the premises permanently for a higher use or to put them into a higher classification."
The within Appellant argues, like the applicant in Richards, (1) the subject property was never altered so as to prevent resumption of the nonconforming use, (2) the property was not put to a use higher than the prior nonconforming use or into a higher classification, and (3) the owners stated their actual intent not to abandon the nonconforming use. Appellant then concludes that the nonconforming cement product manufacturing use still lawfully exists upon the subject property. Appellant's argument is unavailing. *Page 9 
 B Loss of Nonconforming Status by Change in Use We embrace the general proposition that `if the continuation of use is interrupted by the voluntary act of the user, the right to continue it as a nonconforming use is ended * * *.' 1 Kenneth H. Young, § 6.65 at 676. See also Jones, 521 A.2d at 545 (`Although an established use may continue notwithstanding the subsequent enactment of a prohibitory zoning ordinance, any change of use mandates compliance with the zoning regulations in effect at the time the change is made.'). (Emphasis added.) Duffy, 896 A.2d at 38.
A change of use occurs when a proposed use is "substantially different from the nonconforming use to which the premises were previously put. . . ." Jones, 521 A.2d at 545 (quoting Souza v. Zoning Board ofReview of Warren, 104 R.I. 697, 699, 248 A.2d 325, 327 (1968)). Although neither the Ordinance, nor Chapter 24 of Title 45 of the Rhode Island General Laws contained definitions in 1988, the meaning of the term "use" may be gleaned by examining the entire Zoning Ordinance in effect at that time. Article II of the Ordinance, entitled "District Use Regulations," contains, inter alia, six different sections identifying various "zones."[3] Within each zone is a list of permitted "uses" describing either the structure or activity allowed in the zone. Certain zones also list uses permitted only by special exception. The listed uses in the various zones identify specific activities or structures. For example, permitted uses within the "light industrial" zone include "[m]anufacture of food products, excluding fish, shellfish, meat, yeast, vinegar, or the rendering or refining of fats and oils," and "[m]anufacture of electronic or plastic products." (Article II, Sec. 4(A)(3) and (7).) There are no uses identified in general terms such as "light manufacturing." Each "manufacturing" use listed includes adjectives describing either the type of product produced, or the components used in the manufacturing process. *Page 10 
Accordingly, the Court finds that the "use" conducted by ACP in this matter must be identified as "cement product manufacturing," and not by a more generic use. See e.g. Wechter v. Board of Appeals, 3 Ill.2d 13,119 N.E.2d 747 (1954) (where a purchaser who desired to conduct a spray painting business on a premises where the preexisting nonconforming use was a tinsmith and woodworking shop was denied a building permit, the court stated: "[t]he fact that both may be generically described as `manufacturing' does not make them identical for present purposes. It is the particular use, and not its general classification, that is contemplated by the ordinance.") It follows then, that when the activity on the within property shifted from "cement products manufacture" to "trash hauling," such change in activity clearly constituted a change in "use" of the property. Therefore, under the holding of Jones, it was mandatory that the new use comply with Hopkington's Zoning Ordinance in effect at that time.
Article VII, Section 3 of Chapter 28 of the Town of Hopkinton Ordinances, in effect in 1988, addressed changes of lawful nonconforming uses. It provides: "[a] lawful nonconforming use may be changed only to a use which conforms to the requirements of the zoning district in which it is located." As noted above, the subject property found itself located in an RFR-80 zone district when the Town enacted its Zoning Ordinance in 1971. This designation has remained unchanged since the 1971 enactment. It is undisputed that cement product manufacturing, and the other uses that the various tenants of the property engaged in are not included as permitted uses in an RFR-80 zone district. Therefore, the change in use in 1988 from cement product manufacturing to trash hauling was an illegal change of use because the "new" use was not among the list of permitted uses in an RFR-80 zone district.
As noted above, under Appellant's interpretation ofRichards, the changes in use that occurred after ACP left the property were permissible. However, Appellant's reliance on *Page 11 Richards is misplaced as it is clearly distinguishable from the case at bar. In Richards, the zoning ordinance in effect in Providence provided that "[t]he nonconforming use of a building or structure may be changed only to a use of the same or more restricted classification." (Richards at 816.) The changes in nonconforming use by the applicant's predecessor in Richards were determined to be use changes to a same or more restricted classification. Here, the Appellant's predecessor in interest, ACP, did not have the same freedom to change a nonconforming use. Unlike the Providence ordinance at issue in Richards, changes in nonconforming uses in Hopkinton's Zoning Ordinance were restricted to those conforming to the zoning district in which the property was located, specifically, RFR-80.[4]
In Harmel v. Tiverton Zoning Bd. of Review, 603 A.2d 303 (R.I. 1992), the Court noted "[a] change of use eliminates the exemption of a nonconforming use from recently enacted zoning ordinances." (Id. at 306) (citing Jones, 521 A.2d at 545). Further, it is well-settled that "[o]nce a municipality has shown an illegal change in use, it is entitled, as a matter of law, to terminate the prior legal nonconforming use as well." Village of Menomonee Falls v. Preuss, 593 N.W.2d 496, 499 (Wisc.Ct.App. 1999). Such is consistent with the overriding public policy to restrict and eventually eliminate nonconforming uses noted in Town of Richmond. Accordingly, this Court finds that the unauthorized changes in use by ACP's tenants after cement product manufacturing ceased at the premises caused the property to lose its nonconforming status.
 C Loss of Nonconforming Status by Abandonment
As noted above, the right to continue a legal nonconforming use is provided by statute. Section 45-24-39(b). However, "[a] zoning ordinance may provide that, if a nonconforming use *Page 12 
is abandoned, it may not be reestablished." Section 45-24-39(c). Under the Hopkinton Zoning Ordinance, abandonment forfeits the legal nonconforming use. The Hopkinton Zoning Ordinance § 8(E) provides:
 "If a nonconforming use is abandoned, it may not be reestablished. Abandonment of a nonconforming use consists of some overt act, or failure to act, which would lead one to believe that the owner of the nonconforming use neither claims nor retains any interest in continuing the nonconforming use unless the owner can demonstrate an intent not to abandon the use. An involuntary interruption of nonconforming use, such as by fire and natural catastrophe, does not establish the intent to abandon the nonconforming use. However, if any nonconforming use is halted for a period of one (1) year, the owner of the nonconforming use will be presumed to have abandoned the nonconforming use, unless that presumption is rebutted by the presentation of sufficient evidence of intent not to abandon the use." Hopkinton Zoning Ordinance § 8(E); see also Section 45-24-39(c).
"The burden of proving abandonment is on the asserting party."Washington Arcade Associates v. Zoning Bd. of Review, 528 A.2d 736, 738
(R.I. 1987) (citing Town of Coventry v. Glickman, 429 A.2d 440, 443
(R.I. 1981)). "[A] mere discontinuance of a nonconforming use for a period does not constitute abandonment of the use." Town of WestGreenwich v. A. Cardi Realty Assocs., 786 A.2d 354, 360 (R.I. 2001). Abandonment requires "an intention to relinquish . . . a known right . . . evidenced by an overt act or a failure to act sufficient to support an implication of such intent." A.T. G., Inc. v. Zoning Bd. ofReview, 113 R.I. 458, 463, 322 A.2d 294, 297 (1974); 4 Arden H. Rathkopf, The Law of Zoning and Planning § 74:2 (2005).
The Board, in its decision, made a number of findings regarding abandonment. It found, inter alia:
 18. A motion was made by Jonathan Ure and seconded by Thurman Sills to find that based on the facts discussed and in particular the lease of the property to various non-cement *Page 13 
manufacturing entities, attempts to sell the property for non-cement manufacturing uses, attempts to rezone the property, statements of ACP's owner not to return to the site, removal of equipment integral to cement manufacturing, and testimony that the gantry crane was a part of the building and could not have been taken with APC without disassembling the building and therefore was not an indication that they did not abandon it by leaving it but in fact it was simply an indication that they did not want to tear their building down, all display that ACP committed overt acts that demonstrate abandonment of its nonconforming use of cement manufacture at 64 Laurel Street.
 IN FAVOR: Ure, Harrington, Scalise, Blatt, Silks. OPPOSED: None.
Pezzullo, in support of her appeal, argues that the building on the property has the same configuration and contains much of the same equipment originally used in ACP's cement manufacturing business. Appellant further notes that the gantry crane has been kept in working order since ACP left the building in 1988. Appellant also argues that ACP intended the nonconforming use to continue, and again cites toRichards and states that a property may be used for other purposes without abandoning a prior nonconforming use "as long as the owner does not intend to permanently use the property for a higher use or put it into a higher zoning classification." (Appellant's memo at 19.) Appellant claims that the "uses of ACP's tenants fell within the same zoning category as the manufacture of cement products." (Id. at 26.) Finally, Appellant argues that she considered what she believed to be the property's nonconforming status as an "important factor" in deciding to make its purchase, and that her intent was to continue such use.
Again, Appellant's reliance on Richards is misplaced. The Hopkinton Ordinance does not allow substitutions of nonconforming uses. ACP's departure from the site with the intent to never return can certainly "lead one to believe that the owner of the nonconforming use neither *Page 14 
claims nor retains any interest in continuing the nonconforming use," as required to find abandonment. Further, the attempts to rezone the property to allow different uses can also be considered an overt act constituting abandonment. The Board has made sufficient findings consistent with the record showing intent on the part of ACP to abandon the nonconforming use. This Court finds no error with its conclusion.
 IV Conclusion
For the reasons stated above, this Court denies the within appeal. The Court finds that the lawful nonconforming use that existed on the property when the Zoning Ordinance was enacted in 1971 has been extinguished. The previous owner of the property, ACP, allowed impermissible changes in use to occur throughout the late 1980's and 1990's causing the property to lose its nonconforming status. Further, there is substantial evidence in the record supporting the Zoning Board's finding that the actions of the owners and their lessees constituted an abandonment of the nonconforming use. Finally, this Court finds that the Board's denial of a zoning certificate was supported by reliable, probative, and substantial evidence on the record, was not arbitrary or capricious, was not affected by error of law and did not constitute an abuse of the Board's discretion. Accordingly, the decision of the Board is affirmed and Appellant's appeal is denied.
Counsel for the Town shall submit an appropriate order in accordance with the Court's decision within ten days from the issuance of this decision.
[1] The building housed a "gantry crane" which was used to lift and move the cement products around the building and outside to trucks. Removal of the crane would materially alter the building's structure and support, as the building is little more than the structure supporting the crane with metal siding tacked onto it.
[2] While Appellant's summary of the holding in Richards is somewhat accurate, her contention that such applies in all abandonment cases is incorrect. As addressed below, the ordinance in Richards is vastly different than the ordinance at issue here.
[3] The zones are described as follows: 1. Rural, farming, residential; 2. Neighborhood business; 3. Commercial; 4. Light industrial; 5. Heavy industrial; and 6. Floodplain and watercourse protection.
[4] This requirement has changed since 1988. Under the 1995 enactment, a lawful nonconforming use may be changed by obtaining a special use permit.