Walter Kuhl and Margaret Kuhl, his wife *v.* The Zoning Hearing Board of Greene Township and G. W. Trichel and Donald Rosthauser, Appellees.

Argued May 9, 1980, before Judges WILKINSON, JR., CRAIG and WILLIAMS, JR., sitting as a panel of three.

*Thomas E. Doyle,* for appellants.

*R. Perrin Baker,* for appellees.

*William T. Jorden,* for intervenors, Green Township Board of Supervisors.

OPINION BY JUDGE CRAIG, June 19, 1980:

Walter and Margaret Kuhl (owners) appeal from an order of the Court of Common Pleas of Erie County which affirmed an adjudication of the Greene Township Zoning Board of Appeals (board) denying use of owners' property as a bank gravel surface mining operation on the ground that its legal non-conforming use status had been abandoned.

The owners, by deed dated October 22, 1978, acquired their 131-acre tract from a partnership consisting of persons named Nelligan and Stoddard.

The tract is presently zoned R-1, Rural Residential, and has been so classified since the township first enacted zoning in 1967. Operation of a gravel pit is a forbidden use in R-1 districts. However, the board found that Clark Construction Supply Company (Clark), under a lease with the Nelligan-Stoddard partnership, had removed sand and gravel from the

tract from 1963 at least through 1972. Thus, no question is raised, nor could there be on the record, that before the enactment of the zoning ordinance an active gravel pit operation was being conducted and thus became a legal non-conforming use in the R-1 district. Twenty of the 131 acres have been involved in the non-conforming use.

However, when the owners sought certification of the existence of the non-conforming use as of 1978, the board found that it had been abandoned in 1973 and the lower court, on appeal, found that abandonment occurred in 1977.

The sole issue is whether the non-conforming use status was ever abandoned.

Abandonment is a question of fact which depends upon all the factors present in a case, and the burden of proving an abandonment of a non-conforming use is on those who assert the abandonment. *Township of Upper Moreland v. Gaunt,* 16 Pa. Commonwealth Ct. 334, 328 A.2d 556 (1974). The court below heard no testimony and received no additional evidence. Our function, therefore, is to determine whether the zoning hearing board abused its discretion or committed an error of law. *Swift v. Zoning Hearing Board of East Hempfield Township,* 33 Pa. Commonwealth Ct. 442, 382 A.2d 150 (1978).

Section 1206 of the Greene Township Zoning Ordinance declares that a non-conforming use shall be considered abandoned when, among other things, "a non-conforming use has been discontinued for a period of one year." The board and the court below held that section applicable to the present case.

Where a one-year limitation on the right to rezone a non-conforming use is imposed by a zoning ordinance, the intention to surrender the right may be presumed from the expiration of the designated period, but it is still necessary to show concurrent overt acts

or failure to act which indicate abandonment. *Miorelli v. Zoning Hearing Board of Hazleton*, 30 Pa. Commonwealth Ct. 330, 373 A.2d 1158 (1977).

The owners contend that the board abused its discretion because its conclusion of abandonment has no basis in the board's findings of fact.

We agree because a full reading of the pertinent findings of fact, set forth verbatim in a footnote,[1] reveals that actual gravel extraction *or related activities*

---

[1] The pertinent findings of fact by the board are as follows:

7. Clark maintained a bank gravel extraction operation continuously from 1963 through 1972.

8. During 1963 Clark installed and began operation of a crushing and washing operation.

9. Clark maintained the crushing and washing operation continuously from 1963 until the end of 1972.

10. Clark dismantled and removed the crushing and washing equipment by the end of 1974.

11. Crushing and washing equipment has not been in place or in use on the property since 1974.

12. Clark removed 96,414 cubic yards of bank gravel and 378,753 tons of processed material between 1961 and 1976.

13. Operation of the gravel pit during 1973 was minimal or non-existent.

14. Operation during 1974 consisted of the removal of 20 cubic yards of 2-B crushed stone and 20 cubic yards of bank gravel.

15. Operation during 1975 consisted of the removal of 5,645 cubic yards of bank gravel.

16. Operating during 1976 consisted of the removal of 380 cubic yards of bank gravel.

17. Operation during 1977 consisted of the removal of 786 cubic yards of bank gravel.

18. All equipment for the extraction and removal of bank gravel was removed by May 31, 1976.

19. During 1976 and 1977 equipment was brought onto the property for the specific purpose of extracting bank gravel and the equipment was removed from the property after the bank gravel had been extracted.

20. Anna G. Stoddard managed the property after May 31, 1976.

occurred continually on the tract from 1963 until the inception of this litigation in 1978.

The board's finding that Clark's gravel excavation operation at the gravel pit was minimal or nonexistent in 1973 and minimal thereafter is not sufficient to support a finding of abandonment of the use. In *Hilltown Township v. Horn*, 13 Pa. Commonwealth Ct. 248, 320 A.2d 153 (1974), *rev'd. on other grounds*, 461 Pa. 745, 337 A.2d 858 (1975), this court held that minimal utilization of a use is sufficient to perpetuate its status as a non-conforming use.

Moreover, in the present case, the owners' predecessor in title presented uncontradicted testimony before the board that Clark, during 1974, was removing its gravel crusher and gravel washer from the premises, as distinct from operations being removed totally.

The lower court perceived the departure of Clark, the lessee, from the site in 1976 as being coupled with a cessation of use until 1978, so as to constitute an abandonment of the use in 1977. However, the conclusion of abandonment of the use in 1977 is not supported by the findings of the board; the board's findings 18, 19 and 20 describe gravel equipment leaving, coming to, and again leaving the property in 1976 and 1977, with Anna Stoddard managing it after May 31, 1976 (see footnote 1). Clark's departure from the tract in 1976 simply coincided with the expiration of

21. Anna G. Stoddard never applied for or received from the Pennsylvania Department of Environmental Resources a surface mine operator's license.

22. Anna G. Stoddard never applied for or received from the Pennsylvania Department of Environmental Resources a permit to use the property as a gravel pit.

23. The Pennsylvania Department of Environmental Resources did not issue any permit to operate the property as a gravel pit until some time after March 15, 1978, when a permit was issued to Walter Kuhl.

24. Walter Kuhl received his surface mine operator's license on March 15, 1978.

its lease. Under Anna Stoddard's management after May 31, 1976, minimal extraction from the pit continued.

Considering the entire pertinent history, the board's own findings indicate that the gravel business existed on the property in every year in question, in the form of some related activity, if not exclusively extraction. *See Horn v. Hilltown, supra.* Removing and replacing equipment, and again removing it, is no more a hallmark of cessation of use than would be, for example, the remodeling of a grocery store temporarily closed for that purpose.

The departure of a lessee, and the occurrence of an interval until another occupancy commences, is not an abandonment. *See Haller Baking Company's Appeal,* 295 Pa. 257, 261-62, 145 A. 77, 79 (1928).

Finally, although operators of the gravel pit after 1976 may have operated in violation of state law because they did not apply for a surface mine operator's license until the present owners did so in 1978, we cannot in this case hold that such a collateral matter evidences an intent to abandon the use.

Accordingly, we reverse the decision of the court below.

ORDER

AND Now, this 19th day of June, 1980, the October 10, 1979 order of the Erie County Court of Common Pleas is reversed.