DECISION
This is an appeal from a decision of the Foster Zoning Board of Review (hereinafter, the "Zoning Board"). Lawrence Jacques and his wife, Donna Jacques, (hereinafter, "Jacques" or "appellants") seek reversal of the Board's recorded decision of December 28, 1998, denying their application for a special use permit in the operation of a stone crusher at their gravel bank. Jurisdiction of this Court is pursuant to (G.L. 1956 §45-24-69.
 Travel/Facts
The appellants own Foster Tax Assessor's Plat 16 Lot 56, at 142 East Killingly Road, consisting of twenty-six (26) acres and zoned as Agricultural/Residential. The appellants claim they operated a gravel bank on the lot on a continuous basis since 1959, when the first fourteen (14) acres of the lot were initially acquired. The Jacques purchased another twelve (12) acres in 1964 and use this area in the present gravel operation.[1]
During the operation of his gravel business, Jacques utilized various tools and devices to crush or break down stone recovered from the pits. These tools included back hoes and stone crushers. In fact, from 1977 to 1982, Jacques operated the Town's stone crusher on his property and processed and eventually sold gravel to the Town. When the Town employed a different gravel supplier in 1982, Jacques purchased his own stone crusher. In 1990, Jacques sold his stone crusher and operated his gravel business on a limited basis due to serious health impairments.
The certified record in the instant matter contains, in addition to the transcript, a series of correspondences among various Town officials, the appellants, and Material Sand and Stone Corporation (hereinafter "MSSC"), who were negotiating with Jacques to remove sand, gravel and rock from his existing gravel pit at the time of the subject litigation. These correspondences further develop the facts and travel of the matter.
In a letter dated May 21, 1990, (Appellants' Exhibit B), the then-Building and Zoning Official for the Town, Carl A. Saccoccio, reminded Jacques that his gravel operation was confined to its present site (Plat 16 Lot 56) and not an abutting, fourteen (14) acre lot (Plat 16, Lot 49), purchased by Jacques several months earlier in 1989. Saccoccio stated that a special exception would need to be obtained from the Zoning Board in order for Jacques to mine the new parcel for gravel. The letter from Saccoccio provided in pertinent part:
 "Your existing bank is confined to the boundaries of Plat 16, lot 56 that you previously owned. Your existing gravel bank is grandfathered, however under our Zoning Ordinance Article IV, section C, any enlargement would require a hearing before the Zoning Board of Review."
Thereafter, MSSC communicated its intentions with respect to Jacques's existing sand and gravel pit in a September 4, 1997 letter to Saccoccio. (Appellants' Exhibit C) MSSC states in that letter that they will "enter into a contract with Lawrence Jacques, to remove sand, gravel, rock, and/or ledge from existing Jacques sand and gravel pit." The letter further provides that: "MSSC will install crushers and screens on the same site as Jacques Sand Gravel Company was previously located, and use the necessary equipment to remove material, such as bulldozers, loaders, excavators and trucks."
In order to effectuate this arrangement, the appellants hired the Terry Lane Corporation to prepare and submit a Soil Erosion Control Plan to the Planning Board on their behalf, pursuant to the Town of Foster Soil and Erosion Control Ordinance, Article V. Section 1 (D) (See Exhibit T). The Planning Board reviewed this plan in conjunction with the proposed plan operation at its May 20, 1998 meeting. Subsequently, in a June 17, 1998 letter from the Foster Public Works Director, Michael Hey to MSSC, Hey made suggestions for future work at the Jacques Gravel Pit, which included the implementation of a new culvert pipe under the Jacques's driveway. (See Exhibit M). Hey stated in the letter that: "I feel confident that through our mutual cooperation your facility will be welcomed, and an asset in town."
A new Building and Zoning Official, Chris Gorham, replaced Saccoccio during this interval, and soon thereafter, in June 1998, sent a letter to Jacques requesting documentation to prove that his gravel bank was in use prior to July 1967 (the date the zoning ordinance was enacted). (See Exhibit N). Additionally, Gorham stated in this letter that:
 "Zoning Board approval will be necessary for any quarrying at the gravel bank, . . . [r]emoval of ledge or bedrock and/or blasting of rock would be considered a quarrying activity. . . a special use permit [is necessary] to conduct quarrying at this site. As far as asphalt manufacturing or refining at the site is concerned, that is a prohibited use, see Town of Foster Zoning Ordinance Article IV, Section 14."
The letter also provided that a special use permit must be applied for and granted by the Zoning Board before mining operations may be commenced on the fourteen acres of land acquired in 1989. (See Exhibit N).
In a letter dated July 2, 1998, Jacques and MSSC were notified by the Town Planner, Warren J. Ducharme, that the Planning Board had approved the project plan on June 17, 1998, and "reviewed this project under the authority granted under the "Soil Erosion and Sediment Control Ordinance' for the TOWN OF FOSTER as required by (Article V Section 1 D) 'Existing Uses and Facilities' as a sand and gravel extraction operation." The Planning Board approval, however, was subject to the following preliminary conditions: (i) limiting the hours of commercial vehicle operation on East Killingly Road to the periods when school buses are not in operation on the road, (ii) limiting the noise level for the proposed rock crusher to a standard below an "objectionable" level, (iii) maintaining a paved entry to the gravel site and an adequate and maintained track-pad, and (iv) repairing any damage to East Killingly Road as a result of this operation.
In a letter from the Building and Zoning Official, Chris Gorham, dated July 30, 1998, Jacques and his potential lessee, MSSC, were approved to commence gravel extraction operations, subject to the conditions imposed by the Planning Board. (Exhibit C). In the final paragraph of this approval letter, however, Gorham limited Jacques' operation as follows:
 "This letter is to authorize you to perform gravel extraction operations only. It should not be construed as authorizing in any manner the crushing, washing, or processing of any of the materials extracted from the property. These uses are not permitted uses in the Town of Foster's Zoning Ordinances and are beyond the scope of the use of the property in July, 1967 based on the evidence that you have submitted. You have the right to appeal my decision to the Zoning Board of Review within 30 days. You may also apply to the Zoning Board of Review for a special use permit and/or variance for operations you may wish to carry out beyond gravel extraction."
Jacques filed a timely appeal of Gorham's restrictions on July 31, 1998. (Appellants' Exhibit K). In the portion of the form requesting the appellant to "STATE GROUNDS FOR SPECIAL USE, VARIANCE, OR APPEAL," Jacques states "Appeal Letter of 7-31-98 from Building/zoning official which prevents crushing of stone which is non-conforming use." The matter was then scheduled for public hearing which began on November 11, 1998, and continued to November 23, 1998, December 12, 1998, and December 23, 1998. Appellant filed the instant appeal in a timely manner on January 15, 1999.
 Standard of Review
This Court possesses appellate review jurisdiction of a zoning board of review decision pursuant to G.L. 1956 § 45-24-69(D), that provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing the decision of a zoning board of review, the Court must examine the entire certified record to conclude whether substantial evidence exists to support the finding of the zoning board of review.Salve Regina College v. Zoning Bd. of Review, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd. of Review of Warwick,122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); see also Restivo v.Lynch, 707 A.2d 663 (R.I. 1998). Substantial evidence means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and an amount more that a scintilla but less than a preponderance. Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). An essential function of a zoning board of review is to weigh the evidence presented to it and in its' discretion, may accept or reject such evidence presented. BellevueShopping Center Associates v. Chase, 574 A.2d 760, 764 (R.I. 1990). This Court should exercise restraint in substituting its judgment for the zoning board of review and is compelled to uphold the board's decision if the court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quoting Apostolou v. Genovesi, 120 R.I. 501, 507,388 A.2d 821, 825 (1978)).
 The Zoning Board Hearing
At threshold issue is whether the Zoning Board was justified in expanding the scope of the hearing. Jacques appealed the portion of the July 30, 1998 letter from the Building and Zoning Official for the Town, Chris Gorham. At the November 11, 1998, Zoning Board hearing, Jacques learned that the hearing would be deemed "de novo" and that the scope of the hearing would be expanded to include issues relating to whether or not the gravel bank itself was a preexisting, nonconforming use and further, whether or not this use had been previously abandoned. Jacques objected to this expansion of issues and argued that his nonconforming status was not before the Zoning Board and therefore, the Zoning Board should be restricted to the original determination appealed from — the crushing of stone as a nonconforming use.
In discussing the matters to be addressed at the November 11, 1998 Zoning Board hearing, Nicholas Gorham, the Town Solicitor for Foster, stated that: "[E]verybody is allowed to testify here on all issues because it is a new hearing, a de novo hearing, and the Board can hear all issues on nonconforming use, including issues of abandonment." (Transcript, p.15, line 3). Gorham further stated:
 "I don't think you can choose part of a letter to appeal. I think if you take an appeal, those who are present at the appeal have a right to present evidence on anything in that letter and there are a lot of people here who may have evidence about other issues that this Board may want to hear evidence on."
Despite previous correspondence from Town officials which indicated that Jacques's gravel operation was grandfathered under the applicable Foster zoning ordinance, the Town proffered evidence at the hearing in the form of aerial photographs taken in 1965 and 1970 to contradict this assertion.[2] Further, the Town alleges that they were justified in expanding the scope of the appeal in its discretion and that such an expansion was warranted because the Zoning Board needed to evaluate the intended use of the property.
Compliance with the components of due process is an imperative element in zoning board appeals and in order to be satisfied, the notice must be "reasonably calculated, in light of all the circumstances, to apprise the interested parties of the pendency of the action, of the precise character of the relief sought and of the particular property to be affected." Zeilstra v. Barrington Zoning Board of Review, 417 A.2d 303, 307 (R.I. 1980). In fact, the adequacy and sufficiency of notice is a requirement of due process and compliance is a jurisdictional prerequisite. Id. The zoning board of review has the authority to "reverse or affirm wholly or partly [the order being appealed] and may modify the order, requirement, decision, or determination appealed from and may make such orders, requirements, decisions, or determinations as ought to be made, and to that end shall have the powers of the officer from whom the appeal was taken." G.L. § 45-24-68. With respect to appeals from the determination of a building inspector, Article XIII, Section 3 of the Foster Zoning Ordinance provides that notice of the public hearing will be given in the same manner as notice of ordinance amendments pursuant to Article X, Section 6. Article X, Section 6 provides that:
 "The Town Council shall first give notice of such public hearing by publication of notice in a newspaper of general circulation within the Town at least once each week for three (3) consecutive weeks prior to the date of such hearing, which may include the week in which the hearing is to be held, at which hearing opportunity shall be given to all persons interested to be heard upon the matter to the proposed Ordinance. . . Such newspaper notice shall be published... and shall:
 1. specify the place of said hearing and the date and time of its commencement;
 2. indicate that adoption, amendment, or repeal of a Zoning Ordinance is under consideration;
 3. contain a statement of the proposed amendments to the Ordinance that may be once in its entirety, or summarize or describe the matter under consideration;
 4. advise those interested where and when a copy of the matter under consideration may be obtained, examined or copied;
 5. state that the proposal shown thereon may be altered or amended prior to the close of the public hearing without further advertising, as a result of further study or because of the views expressed at the public hearing. Any such alteration or amendment must be presented for comment in the course of the hearing."
The Town contends that the language of G.L. § 45-24-68 authorizes the Zoning Board to exercise its discretion in expanding the scope of a zoning appeal and that they were justified in expanding the scope of the appeal to incorporate further necessary evidence. However, the issue being appealed to the Zoning Board is merely the use of the stone crusher.
"The Rhode Island Supreme Court has held that a zoning board's jurisdiction is limited to the scope of the applications before it."Allen v. Zoning Board of Review of the City of Warwick, 75 R.I. 321,66 A.2d 369 (1949). The petitioner in Allen applied to the Warwick Zoning Board of Review for permission to erect a washing plant to store equipment in connection with a gravel operation. See Id. at 324, 370. The board considered Allen's permit application for the gravel washing plant as a request for a full gravel pit, including the operation of a stone crusher, and denied and dismissed the application altogether. Id. at 324, 370. The Court in Allen reasoned that since the petitioner's permit application merely requested leave to erect a washing plant, the Board may only consider that application for a washing plant in its decision. The Supreme Court found that the Board had "clearly exceeded the scope of the application in passing judgment on matters not before them for determination." Id. at 324, 370. The Court clearly held that "[a]ll other matters mentioned in that decision, either directly or by implication, [were].., expressly excluded therefrom as having no force and effect."Id. at 324, 370-71. Similar to the case at bar, this issue was the only matter submitted to the board for the exercise of their discretion, and likewise similar to the instant matter, the Board in Allen "proceeded far beyond the scope of the narrow issue before it." Id. at 324, 370. Therefore, as our Supreme Court found in Allen that the board could not consider extraneous matters that "exceeded the scope of the application," this Zoning Board's hearing on issues unrelated to the use of a stone crusher on Jacques's lot were in excess of their ordinance and statutory authority.
 The Stone Crusher
The advertised issue to be addressed is the subject matter of Jacques's original appeal whether the stone crusher in his gravel pit operated as a legal preexisting nonconforming use. The Foster Building and Zoning Official, Chris Gorham avers that the crushing of stone requires a special use permit. The Town further asserts that even if Jacques had a nonconforming use in the past, such use has been abandoned since a stone crusher has not operated on the property since 1991. The Board decided that there was not "sufficient evidence presented of any intent [by Jacques] not to abandon that use [of the stone crusher], in addition to the fact that the use was without permission from the Board to begin with."
Jacques argues that the use of the stone crusher in his gravel operation is a lawful nonconforming use and presented evidence that he first began utilizing a stone crusher in his gravel operation in 1978, when the Town's own stone crusher was placed on the lot and Jacques processed and sold gravel to the Town. (See Exhibit K). Such an arrangement continued between Jacques and the Town until 1982 when the Town obtained its gravel through another supplier and subsequently removed the crusher. Jacques purchased his own stone crusher in 1983 and used it continuously in the gravel operation until he sold the crusher in 1990 when he became totally disabled.
Pursuant to G.L. § 45-24-39, any use that was in existence at the time of the enactment of a zoning ordinance shall be allowed to continue. Jacques proffers evidence that his stone crusher predated the November 29, 1984, Foster Zoning ordinance which recognized gravel banks as a permitted use. Moreover, Jacques submitted receipts from the time that he crushed stone for the Town. The record clearly reflects that the Town itself was fully aware of such use when it sanctioned the use of its own stone crusher to Jacques for processing gravel for the Town. Even if Jacques use of the stone crusher was limited during this interim, a minimal showing of continued use will suffice. See South County Sand Gravel Co. v. Town of Charlestown, 446 A.2d 1045, 1046 (R.I. 1982) (evidence that individuals had mined the property, even in insubstantial quantities, before enactment of the zoning ordinance was sufficient to support the finding of a nonconforming use). Thus, the record demonstrates that the use of the stone crusher on Jacques's gravel pit constituted a preexisting nonconforming use.
 Abandonment of the Use of the Stone Crusher
The Zoning Board argues in the alternative that even if the Court determines the stone crusher to be a preexisting nonconforming use, such use has been abandoned. It is well established that a nonconforming use can be terminated in cases of abandonment. M.B.T. Const. Corp. v.Edwards, 528 A.2d 336, (R.I. 1987). Rhode Island General Law §45-24-39(c) (1991) provides in pertinent part:
 "A zoning ordinance may provide that, if a nonconforming use is abandoned, it may not be reestablished. Abandonment of a nonconforming use shall consist of some overt act, or failure to act, which would lead one to believe that the owner of the nonconforming use neither claims nor retains any interest in continuing the nonconforming use unless the owner can demonstrate an intent not to abandon the use. An involuntary interruption of nonconforming use, such as by fire and natural catastrophe, does not establish the intent to abandon the nonconforming use. However, if any nonconforming use is halted for a period of one year, the owner of the nonconforming use will be presumed to have abandoned the nonconforming use, unless that presumption is rebutted by the presentation of sufficient evidence of intent not to abandon the use."
The Board contends that the period during which Jacques did not utilize a stone crusher on his property, (from 1991 to the present), represented an overt act, leading one to believe that he neither claimed nor retained any interest in continuing the nonconforming use of the stone crusher.See G.L. § 45-24-39(c).
The Rhode Island Supreme Court has repeatedly emphasized that "the mere discontinuance of a nonconforming use for a period of time does not, ipso facto, constitute an abandonment of that use." Id. at 738 (citing Town ofCoventry v. Glickman,429 A.2d 440 (R.I. 1981); Town of East Greenwichv. Day, 119 R.I. 1, 375 A.2d 953 (1977); A.T. G., Inc. v. Zoning Boardof Review of North Smithfield, 113 R.I. 458, 322 A.2d 294 (1974);Richards v. Zoning Board of Review of Providence, 100 R.I. 212, 213, 213 A.2d at 814 (1965)). There must also be an intent to abandon. Id. Jacques claims that "[t]here is no evidence that [he] had any intent to abandon the use of the stone crusher" and further, "[t]he sole reason for its sale was his total disability."
In Richards v. Zoning Board of Review, 100 R.I. 212, 213 A.2d 814, (1965), the Court determined that a building previously utilized as an industrial bakery continued in its legal nonconforming use as such, even though the premises were not used as a bakery for eleven years. The Court in Richards established that there was no abandonment as a legal nonconforming use absent an intent to abandon by the applicant and in light of the fact that the premises had not been so altered as to prevent its use as a bakery. In the case at bar, there is no evidence of record that the gravel business had been so altered as to prevent the future crushing of stone in its operation. Although Jacques sold his stone crusher due to a disability, that act alone will not constitute the requisite intent to abandon if he intended to resume its operation in the future.
The Zoning Board avers that Jacques's disuse of the stone crusher in 1991 and his limited operation of his gravel business thereafter constituted overt acts sufficient to establish an intent to abandon. In determining whether a nonconforming preexisting use has been abandoned, the Court will view the "facts, circumstances and the intention of the owner of the premises or other person entitled to the use." Richards v.Zoning Board of Review, 100 R.I. at 218, 213 A.2d at 817 (quoting 8 McQuillin, Municipal Corps. (3rd ed. Rev.) § 25.192, 491.). It has previously been established by the Rhode Island Supreme Court that "[a]n involuntary interruption of a nonconforming use such as an economic depression or a fire does not establish the requisite intent to abandon because the cessation of the use is not a voluntary act of the user.Washington Arcade Associates v. Zoning Bd. of Review of Town of NorthProvidence, 528 A.2d 736, 738 (R.I. 1987) (citing 1 Anderson, § 6.66 at 639-641). Jacques has emphasized that his stone crushing ceased due to a physical disability. An involuntary cause, such as a disability in this case, will not furnish the requisite intent to abandon. See Id.
Further, "in determining whether or not a nonconforming use has been abandoned, the nature of the subject matter must be given due consideration." Richards v. Zoning Board of Review, 100 R.I. at 218, 213 A.2d at 817 (quoting 8 McQuillin, Municipal Corps. (3rd ed. Rev.) § 25.192, 491.) "The fact that a nonconforming gravel pit was operated at a minimal level does not demonstrate an abandonment of the use." Kuhl v.Zoning Hearing Bd., 415 A.2d 954 (Pa. Cmwlth. 1980). In Kuhl, the Commonwealth Court of Pennsylvania determined that a gravel pit operator did not possess the requisite intent to abandon a nonconforming use, when he dismantled and removed his stone crushing and washing equipment but "actual gravel extraction or related activities occurred continually on the tract." Id. at 956. The Kuhl Court further determined that "[r]emoving and replacing equipment and again removing it, is no more a hallmark of cessation of use than would be, for example, the remodeling of a grocery store temporarily closed for that purpose." Id. at 957. Here, the Court determines that Jacques continued to operate his gravel pit, albeit on a limited basis, and that the sale of his equipment does not constitute the requisite overt act necessary to evidence an abandonment. Further, the nature of a quarry operation is one of sporadic operations and a discontinuance or abandonment cannot be implied if blasting and crushing stops after a large stockpile of loose rock has been accumulated. Lane County v. Bessett, 46 Or. App. 319, 612 P.2d 297
(1980). From the record evidence in the instant case, including Jacques's explanation that he did not continue crushing stone due to a total disability, and the nature of a gravel operation, the Court determines that the Board had before it sufficient evidence of Jacques's intent not to abandon the stone crushing as a preexisting nonconforming use.
Accordingly, after reviewing the entire record, this Court finds that the decision of the Foster Zoning Board of Review was not based upon the reliable, probative, and substantial evidence before it and was affected by error of law, and in excess of its authority. The Zoning Board's decision was arbitrary and capricious and characterized by an abuse of discretion. G.L. § 45-24-10(d)(6). Substantial due process rights of the appellant have been prejudiced. Accordingly, the decision of the Zoning Board is reversed.
Counsel shall prepare an appropriate judgment for entry.
[1] Jacques purchased an abutting fourteen (14) acre lot in 1989. According to the record, this new parcel is not currently in use for the mining of gravel and is not part of this appeal.
[2] Article V, § 3 of the Foster Zoning Ordinance reads as follows: "A building, structure, or use of land, was lawfully established if it was in existence prior to July 7, 1967 or was established in conformance with the Zoning Ordinance in effect at the time the use was first established. A lot was lawfully established if it was of record or shown on a recorded plat prior to July 7, 1967 and was separately owned."